UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

**KENNETH WILBERT BROWN**                                               **PETITIONER**

v.                                                    **CIVIL ACTION NO. 3:20-CV-788-CRS**

**BRAD ADAMS, Warden**                                                  **RESPONDENT**

### MEMORANDUM OPINION

This matter is before the Court for consideration of the objections of petitioner Kenneth Wilbert Brown (DN 20) to the findings of fact, conclusions of law, and recommendation of the United States Magistrate Judge that Brown's petition for habeas corpus be dismissed with prejudice. (Amended Report and Recommendation ("Report"), DN 19).

To briefly recap the procedural history,[1] Brown is serving a 24-year sentence for murder, wanton endangerment, tampering with physical evidence, and trafficking in marijuana while in possession of a firearm. His conviction was affirmed on direct appeal by the Supreme Court of Kentucky, and the United States Supreme Court denied Brown's petition for writ of certiorari. Brown then filed a motion to vacate, set aside or correct his conviction and sentence (an "11.42 motion"). The motion was denied, and that denial was affirmed by the Kentucky Court of Appeals. The Supreme Court of Kentucky denied discretionary review of the 11.42 motion on December 5, 2018.

---

[1] The Magistrate Judge set out the factual and procedural history in greater detail on pages 1-4 of the Report, DN 19.

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") requires that a petition for writ of habeas corpus be filed with the federal court within one year of the date on which judgment became final by conclusion of direct review. 28 U.S.C. § 2244(d). The running of the one-year period stops during the time a properly filed application for post-conviction or collateral review is pending. § 2244(d)(2). The one-year clock for Brown to file a petition in this Court began to run on June 9, 2014 when his direct appeal of his conviction became final. It stopped from November 26, 2014 until December 5, 2018 when judgment became final on Brown's 11.42 motion. The time ran again after the December 5, 2018 final order until June 18, 2019 when the one-year limitations period expired. Brown does not disagree with this sequence of events or calculation of the expiration date. DN 20, p. 2.

Brown filed his petition in this Court on November 4, 2020. The magistrate judge noted that it was filed "nearly a year and a half late." DN 19, pp. 2, 4.[2] While acknowledging the lateness of the filing – 1 year and 4 months after expiration of the period in which he was required to file – Brown argues that he is entitled to equitable tolling because (1) he did not know of the December 5, 2018 denial of discretionary review because his attorney failed to notify him

---

[2]The Magistrate Judge filed an Amended Report and Recommendation (DN 19) on June 14, 2021 correcting a calculation error and addressing a number of issues not addressed in the first report (DN 15). Brown's Objections (DN 20) were placed in the prison mail by Brown on the same day, June 14, 2021. Thus, it is not possible that Brown would have received the Amended Report at that time. Further, substantively, Brown's objections appear to be addressed to the Magistrate Judge's first report (DN 15) issued May 27, 2021. He has not filed a document styled "objections" to the Amended Report, despite the passage of approximately forty-five days since its issuance. The Court could accept and adopt the Amended Report as unopposed. However, the Court believes the better course is to consider the objections (DN 20) and arguments made in Brown's separate motion for issuance of a Certificate of Appealability (DN 21) as made to the Amended Report in order to ensure consideration of all of Brown's arguments. Brown's objections are comprehensive and appear to apply, at least in part, to both the initial and the amended report. Brown also includes arguments addressed to the Amended Report in his motion for COA. Therefore, to the extent they apply the Magistrate Judge's analysis in the Amended Report, the Court will consider all of the arguments as if made in objection to the Amended Report. Brown objects to the magistrate judge's finding that he filed his petition "*over* a year and a half late." DN 20, p. 2 (emphasis added). In the Amended Report, the magistrate judge changed this finding to "nearly a year and a half late," a correct finding, as Brown filed his petition 1 year and 4 months after the 1-year deadline. Brown's objection is thus moot. Brown also references his "actual innocence" argument which he states: "the Magistrate and repsondent [sic] opted to ignore." DN 20, p. 7. While first report did not address the "actual innocence" argument, the Amended Report contains an added section analyzing the argument. We address the "actual innocence" argument later in this opinion. All references going forward to the "Report" are referring to the Amended Report and Recommendation (DN 19).

of the outcome, (2) the lockdowns prompted by the COVID-19 pandemic in and around March of 2020 should toll any time accruing, and (3) he engaged in reasonable inquiry about his case status. He also contends that he is entitled to application of the "actual innocence" exception to the 1-year statutory bar.

1. Equitable Tolling

Brown contends that the time for filing should be tolled since his court-appointed counsel failed to timely inform him that the Supreme Court of Kentucky denied discretionary review of his 11.42 motion. He states that he did not learn of the ruling until July 17, 2020 when he called the Kentucky Department of Public Advocacy ("DPA") who had represented him in the case to inquire about the status of the motion. He filed his motion approximately four months later.

As noted by the magistrate judge, this appears to be factually accurate, as there is a letter from the DPA dated July 17, 2020 which apologizes for the oversight in informing him of the disposition and provides a copy of the Order. (DN 1-2, p. 12). Brown filed his petition November 4, 2020.[3]

The magistrate judge noted that while "'a substantial, involuntary delay in learning about the status of…appeals may constitute extraordinary circumstances to warrant' equitable tolling," (DN 19, p. 5, *quoting Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 462 (6th Cir. 2012)), "petitioners who receive delayed notification of a state court judgment due to clerical or attorney errors may not seek equitable tolling if they 'passively await decision.'" (DN 19, p. 5, *quoting Robinson v. Easterling*, 424 F. App'x 439, 443 (6th Cir. 2011)).

The Court agrees with the magistrate judge's finding that Brown was not reasonably diligent

---

[3] Despite some mailing issues with the institution, the parties both indicate that Brown filed his petition on November 4, 2020. Any discrepancy in the date of filing, if any should be found to exist, would be a matter of no more than a week and of no significance to the analysis.

in pursuing his rights. The magistrate judge noted that had Brown inquired sooner, he would have been able to timely file his habeas petition. *See*, *Holland v. Florida*, 560 U.S. 631, 649 (2010); *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 462 (6th Cir. 2012).

Brown contends that the magistrate judge's finding that he should have inquired about his case sooner imposes a standard of "maximum feasible diligence" where only "reasonable diligence" is required. DN 20, pp. 6-7. The Court finds this objection to be without merit.

In *Robinson*, *supra.*, relied upon by the magistrate judge, Robinson filed a petition for post-conviction relief on October 5, 2003 in state court. Robinson inquired with his attorney about the status of his case on March 29, 2006. The state supreme court denied review of his petition on October 2, 2006. The 1-year period for filing a habeas petition in federal court expired on September 21, 2007. Robinson again inquired about his case in October 2007, shortly after the limitations period had expired. After learning of the supreme court's denial, Robinson filed his petition on October 23, 2007, despite its untimeliness, 32 days beyond the deadline. *Robinson*, 424 F. App'x at 442-443.

Robinson sought equitable tolling of the limitations period on the ground that his failure to meet the deadline unavoidably arose from circumstances beyond his control. His attorney had failed to keep him updated on the status of his case despite having promised him he would do so. Robinson contacted his attorney for an update 2 ½ years after the filing of the petition for post-trial relief, and then waited 18 months to make any further inquiries about the status of the case. In denying Robinson equitable tolling of the limitations period, the Sixth Circuit stated: "While this Court has recognized that attorney assurances and the realities of incarceration may justifiably delay a petitioner's request for a case status update [citations omitted], this Court has never granted equitable tolling to a petitioner who sat on his rights for a year and a half, and we

decline to do so here." *Robinson*, 424 F. App'x at 443. The court noted that a petitioner has an independent duty to stay informed of his case status. *Id.*

Similarly, Brown was aware of the November 2014 filing of an 11.42 motion on his behalf (DN 1, p. 3), yet he did not himself initiate any inquiry concerning the status of that motion for 5 ½ years. Brown received a letter in December 2017 from the DPA providing him an update. DN 1-2, p. 6.  The letter informed Brown that a brief had been filed on his behalf in the Kentucky Court of Appeals.  This was presumably an appeal of Brown's 11.42 motion, but the letter does not contain a case number or specific reference to the motion which would establish that fact.  Assuming, *arguendo*, that the letter notified him of the filing of an appeal of the 11.42 motion, Brown was then on notice that his 11.42 motion had progressed to the appeals stage in 2017.  He apparently did not receive any other updates from the DPA in the interim concerning the status of the motion at the Court of Appeals or the filing of a motion for discretionary review at the Supreme Court of Kentucky.

Brown did not inquire about the status of the appeal until July of 2020, over 2 ½ years after receiving the letter.  Brown's July 2020 phone call to the DPA thus came over 1 ½ years after the denial of discretionary review by the Supreme Court of Kentucky (December 5, 2018) and over 1 year after the expiration of the limitations period (June 18, 2019).

While there is no bright line rule for what constitute a reasonable period of time to await a ruling and what period evidences a lack of diligence, the delay in inquiring in this case surely exceeds the bounds of reasonable pursuit of one's rights, and Brown lacks any explanation for the delay other than his unquestioning reliance upon the DPA to keep him informed.  He urges that he remained in contact with the DPA concerning his other cases and that it was a lot to expect a defendant to "have to navigate litigations in the middle of a global pandemic" and that

this difficulty should be considered a "mitigating factor."  DN 20, p. 4.

Brown contends that it was reasonable for him to rely upon the DPA, which was representing him in a number of other cases during that time period, to let him know when rulings were handed down in his case.  He states that the DPA had never failed to inform him of the progress of his cases in the past, so he felt confident he could rely upon them to continue to do so.  Brown's assertion that he maintained contact with the DPA concerning his other cases is a statement that cuts both ways.  He indicates that he was in contact with DPA attorneys regularly but heard nothing concerning his 11.42 motion for over two years.  Thus, it appears out of the norm for him to have received no communication concerning that motion.  Contrary to Brown's contention, such blind reliance and 2 ½ years without inquiry was not reasonable diligence in pursuing his rights.

As the Court found in *Robinson*, at some point reliance ceases to be reasonable and a petitioner who fails to inquire about the status of his case will be found to have sat on his rights and thus be ineligible for equitable tolling.  As noted by the magistrate judge, the Sixth Circuit in *Robinson* found that delay of a year and a half before further inquiry defeated Robinson's claim that he diligently pursued his rights. This Court agrees with the magistrate judge's conclusion that Brown is not entitled to equitable tolling on the ground of delay caused by a failure of the DPA.

The magistrate judge concluded that, "[l]ike Robinson, Petitioner 'sat on his rights for [nearly] a year and a half,'  424 F. App'x at 443, which is too long to qualify for equitable tolling." DN 19, p. 5.  Brown urges in his objections to this finding that it is "vitally important" to the analysis that the Court understand that he filed his petition *1 year and 4 months* late, which is less than a year and a half, and thus less than the time found in *Robinson* to be unreasonable.

DN 20, p. 3.  We indicated at footnote 2 herein that the magistrate judge corrected his own calculation and stated in the Amended Report that Brown filed his petition *nearly* a year and a half after the expiration of the 1-year limitations period.  This amendment by the magistrate judge mooted Brown's objection on this point.

We note further, however, that Brown and, apparently, the magistrate judge focused on the limited period between the filing deadline and the date upon which Brown actually filed his petition, a period of 1 year and 4 months, in assessing whether grounds existed to equitably toll the statute of limitations.  The Court finds that Brown's tolling argument is dependent upon his assertion that his attorneys failed to keep him apprised of the status of his case.  Thus, the question of his diligence and whether reasonable diligence would have enabled Brown to timely file his petition is paramount.  That question clearly has nothing to do with the period of time *after* the expiration of the limitations period. If Brown cannot establish that he was reasonably diligent in pursuing his rights, his reasons for filing his petition 1 day or 100 days past the deadline simply do not matter.  No late filing would be permissible.

As of June 18, 2019, Brown no longer had a right to file a habeas petition, as the limitations period had expired.  Brown admits as much.  He has not shown that he was reasonably diligent in pursuing his rights prior to the 1-year deadline but he was nevertheless prevented from meeting that deadline by circumstances beyond his control.  Brown's petition must be dismissed as untimely.  Thus, this Court need not focus on the lateness of the filing.

Brown asserts he faced other obstacles that prevented his filing his petition until November 4, 2020. For example, he has argued that prison lockdowns due to COVID-19 hampered his efforts.

With respect to Brown's argument concerning the COVID-19 pandemic, the Court

understands that the lockdowns which were implemented as the pandemic took hold during 2020 made it difficult, if not impossible, for prisoners to utilize library facilities to prepare court filings. Thus, with respect to the period after he learned of the state court disposition, this Court might consider affording Brown the benefit of the doubt concerning the four months between July, 2020 and November, 2020 before he filed his petition and find that the time was tolled for that period. Whether the four-month delay purportedly due to lockdowns during the pandemic was actually an extraordinary circumstance that stood in his way of filing his petition sooner than November 2020 is questionable, however, inasmuch as Brown apparently had no difficulty in filing two bar complaints against the DPA in August and September of 2020 for failing to timely notify him of the Supreme Court's denial of discretionary review. DN 1-2, p. 15. But we need not decide this issue since any post-July 2020 delay is not determinative of the equitable tolling question, as Brown has not shown the requisite justification to save his case from dismissal.

Finally, we note that the one-year period for Brown to file his habeas petition expired in June of 2019, long before the global pandemic. The limitations period had already expired before any cases of COVID-19 emerged in very early 2020. According to Brown, he was subject to lockdowns beginning in March 2020.[4] The lockdowns thus occurred nine months after the expiration of the 1-year filing period. Therefore, there is no basis for Brown's assertion that a "mitigating factor" existed at any time prior to the expiration of the 1-year deadline such that he was required to "navigate litigations in the middle of a global pandemic." DN 20, p. 4.

2. "Actual Innocence" Exception

Brown urges in response to the Warden's Answer to the petition that the untimeliness of his

---

[4] The Court has not verified that Brown was subject to lockdown in March of 2020, so we will accept that representation at face value for purposes of this opinion.

petition should be excused under the "actual innocence" exception because (1) "new evidence was discovered during his post-conviction proceedings, via "expert testimony," that completely disproved the Commonwealth's theory that the deceased was killed by a ricochet bullet," and (2) "review grounds 5 and 21 of his petition, and the supporting arguments within the attached Memorandum of law, as supportive arguments of his innocence concerning the rest of the charges as well." DN 16, p. 9. DN 16, p. 9.[5] In his objections, Brown discusses his eleventh and sixteenth grounds which concern the "ricochet bullet" argument and his assertion of self-defense. DN 20, p. 8. None of these grounds support his contention that he is entitled to proceed under the "actual innocence" exception and excuse his untimeliness in filing his petition.

The magistrate judge correctly noted that "[A]ctual innocence means factual innocence, not mere legal insufficiency," quoting *Souter v. Jones*, 395 F.3d 577, 590 (6th Cir. 2005). DN 19, p. 6.

The magistrate judge observed that Brown's contention that the trial court erred in declining to grant a directed verdict of acquittal on the charge of trafficking in marijuana (Brown's ground 5, (DN 1, p. 13)) was rejected on direct appeal. DN 19, p. 5. A review of the record reveals that the magistrate judge is correct on this point. There is no contention that new evidence establishes his actual innocence of this charge. The magistrate judge correctly concluded that Brown is not entitled to late filing based upon the "actual innocence" exception to the 1-year limitations period with respect to this ground.

The magistrate judge also indicated that Brown's ground 21 (that appellate counsel was

---

[5] The magistrate judge indicated that Brown's reply brief was untimely. DN 19, p. 1, n. 2. This is incorrect. The magistrate judge focused on the date the reply was docketed rather than applying the Mailbox Rule for this prisoner who placed his reply in the prison mail on May 21, 2021 and we note that he reply was postmarked May 24, 2021, the date the reply was due. Thus, Brown's reply brief was timely filed. *McCauley v. Forshey*, No. 21-3236, 2021 WL 237681 (June 4, 2021)("When a party is incarcerated, …a filing is considered timely 'if it is deposited in the institution's internal mail system on or before the last day for filing.'"). We note this inaccuracy, but it was not raised by Brown in his objections, nor is it of any significance to the analysis or outcome, as the magistrate judge addressed the "actual innocence" argument in the amended report.

ineffective for failing to argue that the trial court erred in declining to direct a verdict on the charge of murder due to self-defense (DN 1, p. 50)) was rejected by the Court of Appeals "because [Petitioner] admitted firing at [the victim] to get his marijuana back, self-defense was unavailable to him." *Brown v. Commonwealth*, 2018 WL 3602783, at *8 (Ky.App. July 27, 2018). DN 19, p. 6. Brown's objections address this finding in discussing grounds 6 and 11. (DN 20, p. 8-11).

Brown contends that he should have been afforded the opportunity to develop an expert opinion concerning the science of bullet trajectories through windshield glass in order to discredit the Commonwealth's expert testimony offered by the Commonwealth at trial. He made this argument in his 11.42 motion and attached a number of articles discussing this topic. At trial the Commonwealth offered evidence, through the testimony of an experienced police officer, that it was likely the victim was shot while sitting in the passenger seat when a bullet was fired, hitting the windshield and ricocheting into the victim's head. Brown's grounds 11 and 16 in his petition challenge counsels lack of preparation to address the Commonwealth's "windshield and ammunition" expert, Detective Jawor (ground 11), and trial counsel's failure to call a defense expert whose testimony would have supported his defenses of self-defense and duress (ground 16). In the 11.42 motion, Brown requested funding to further develop this so-called "new evidence" through an expert whom he contends his attorney should have retained and called in his defense at trial. The request for funds to develop this evidence post-conviction was denied, as "discovery is not authorized in an RCr 11.42 proceeding." *Brown v. Commonwealth*, 2018 WL 3602783 (Ky.App. July 27, 2018).

The purported "new evidence" which Brown seeks to develop and present in support of grounds eleven and sixteen of his petition is not the reliable new evidence required to avail

himself of the "actual innocence" exception. In order for the untimeliness of Brown's petition to be excused, he must "show that it is more likely than not that no reasonable juror would have convicted him in light of…new evidence." DN 19, p. 6, *citing McQuiggin v. Perkins,* 569 U.S. 383, 399 (2013)(*quoting Schlup v. Delo*, 513 U.S. 298, 327 (1995)). The Supreme Court of Kentucky stated that

> Appellant's defense was that he shot at Curd's vehicle because he was in fear of his life. Yet, during the interview with Detective Cohn, Appellant plainly stated that he shot at the vehicle so that he could retrieve the stolen marijuana.

*Brown v. Com.*, 416 S.W.3d 302, 312 (Ky. 2013). The Kentucky Court of Appeals described the evidence in this case as follows:

> Detective Jawor's testimony was based entirely on his specialized training and experience. He reviewed photos of the scene the day before he testified, but conducted no independent testing in Brown's case. The substance of his testimony was described by the Supreme Court as:
>
>> Detective Jawor's testimony mostly concerned the results of different ammunition hitting various types of car windshields. Detective Jawor stated that, after reviewing photos of Curd's vehicle, it was his opinion that a bullet hit the inside of the windshield. Since the bullet failed to penetrate the glass, causing a "spider web" type of break, it was his opinion that the bullet likely ricocheted. Detective Jawor's testimony is relevant because it gives more weight to the Commonwealth's case that [Brown] was not acting in self-defense. It was [Brown's] contention that the victim was hanging out of Curd's vehicle when he was shot, while the Commonwealth theorized that Curd was sitting in the passenger's seat when the bullet was fired, hitting the windshield and ricocheting into the victim's head.
>
> *Id.* at 309.
>
> The trial court denied RCr 11.42 relief because advance disclosure of Detective Jawor's testimony would not have changed counsel's ability to cross-examine and impeach him. The Commonwealth did not contact Detective Jawor until very near the start of trial. Had counsel submitted a written request for notice, counsel would have had very little additional opportunity—if any—to prepare to refute the detective's testimony. Furthermore, the trial court recessed court for the afternoon to afford counsel time to meet with Detective Jawor and learn his impressions of the case. The record reveals defense counsel thoroughly cross-

> examined the witness, highlighting weaknesses in his testimony including not personally conducting any tests, reviewing only photos, and, inability to determine the velocity of any ricochet, its path, or where it would land.
> Detective Jawor testified only about twenty minutes during a trial that spanned seven days. Coupled with his testimony was Brown's own statement to police in which he admitted firing at the vehicle in a strong desire to recover eight pounds of marijuana he repeatedly called his "life." Four eyewitnesses also testified they saw Brown pursue the vehicle and shoot at it. Additionally, Brown's friend, Grice, testified when he picked up Brown after the shooting, Brown told him he had been robbed and shot at the car as Curd drove off, trying to stop the car to recover his marijuana. Brown also told Grice he wanted Talbert dead. Finally, the medical examiner established Talbert was immediately incapacitated by a head wound and most likely was unable to return fire. While relevant, Detective Jawor's testimony was just one component of the Commonwealth's strong case. A more complete cross-examination would not have resulted in Brown's acquittal. Thus, we cannot say the failure to file a written request for notice of experts was prejudicial, especially since the Commonwealth had provided summaries of the testimony of other experts without the filing of such a request.

*Brown v. Commonwealth*, No. 2017-CA-001051-MR, 2018 WL 3602783, at *4 (Ky. Ct. App. July 27, 2018).

There is nothing about bullet trajectories or the position of the victim that would negate the defendant's own admission and the testimony of witnesses that Brown pursued and shot at the vehicle. Brown argues that such evidence "completely disproves the Commonwealth's theory of a ricochet bullet" and thus would have supported his defenses of self-defense and duress. The magistrate judge already noted with regard to the twenty-first ground concerning failure to direct a verdict that the Court of Appeals concluded that "because [Petitioner] admitted firing at [the victim] to get his marijuana back, self-defense was unavailable to him." *Brown v. Commonwealth*, 2018 WL 3602783, at *8 (Ky.App. July 27, 2018). We find this point equally applicable to Brown's argument concerning the eleventh and sixteenth grounds. The full elaboration of this statement by the Court of Appeals indicates that

> This case turned on Brown's motive for shooting and killing Talbert. He claimed self-defense, but his own statement to police—confirming he shot at Talbert as Curd drove away in an attempt to retrieve eight pounds of marijuana he described as his "life"—was too much to overcome, especially when coupled with

> testimony from four eyewitnesses and Grice to whom he admitted he wanted Talbert dead. In addition to compelling testimony, there was a trove of physical evidence including defects to only the passenger side of Curd's vehicle and a single bullet striking Talbert's head and instantly incapacitating him.
>
> Because Brown admitted firing at Talbert to get his marijuana back, self-defense was unavailable to him. Based on the record before us, all allegations of attorney ineffectiveness were refuted by the record, making an evidentiary hearing unnecessary. *Id.* Thus, the trial court did not err in denying Brown's motion to vacate without a hearing.

*Brown v. Commonwealth*, No. 2017-CA-001051-MR, 2018 WL 3602783, at *8 (Ky. Ct. App. July 27, 2018).

This proffered "new evidence" does not establish factual innocence of the crime as Brown contends. *Souter v. Jones*, 395 F.3d 577, 590 (6th Cir. 2005). In light of the significant amount of evidence supporting the Commonwealth's case, not the least of which was Brown's own admission to shooting at the victim to get his marijuana back, Brown cannot show that it is more likely than not that no reasonable juror would have convicted him in light of the newly minted expert testimony he offers. Thus, the untimeliness of Brown's petition cannot be excused and it must be dismissed.

3. Certificate of Appealability

The magistrate judge denied Brown a Certificate of Appealability finding that "no jurists of reason would find it debatable that the petition was filed past the applicable 1-year period and that Petitioner is not entitled to equitable tolling." DN 19, p. 7. The Court agrees, and further finds that no jurists of reason would find debatable that Brown failed to establish that his late filing may be excused on the ground of actual innocence. A Certificate of Appealability will be denied as to each ground asserted by the Petitioner.

...

A separate Order accepting and adopting the magistrate judge's Report (DN 19), supplemented by this Memorandum Opinion, will be entered herein this date.

August 12, 2021

Charles R. Simpson III, Senior Judge
United States District Court

cc: Kenneth Wilbert Brown, *pro se*